UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

TODD NATHANIEL BREY                                                                PLAINTIFF

v.                                          CIVIL ACTION NO. 4:15-CV-P135-JHM

DAVID OSBORNE *et al*.                                          DEFENDANTS

**MEMORANDUM OPINION**

      This is a civil rights action brought by a pretrial detainee pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 594 U.S. 199 (2007). For the reasons set forth below, the action will be dismissed.

**I.    FACTUAL ALLEGATIONS**

      Plaintiff is currently housed at the Daviess County (Kentucky) Detention Center (DCDC). He brings suit against one corporation – Advanced Correctional Healthcare – and nine individuals whom he alleges are employed by either DCDC or Advanced Correctional Healthcare. The nine individual Defendants are Jailer David Osborne; Sergeant Marty Teasley; Deputy Jailer Sherry Hurst; Deputy Jailer Roy Thompson; Lieutenant Jack Jones; Doctor/Physician's Assistant Matt Johnston; Nurse Connie Melbahaur; Nurse Brad Brown and Nurse Chris Ledding.[1] He sues all individual Defendants in both their official and individual capacities.

---

[1] Plaintiff originally identified Nurse Chris Ledding as Nurse Chris Strange and referred to her as Nurse Strange throughout his Complaint. However, Plaintiff filed an Amended Complaint (DN 7) in which he stated that Nurse Chris Strange's actual name was Nurse Chris Ledding.

Plaintiff reports that he was booked at DCDC on September 4, 2015. At that time, he alleges that he advised a DCDC official that he was under the care of a neurosurgeon and was scheduled for surgery on September 14, 2015, for a herniated disc. He alleges that he also told the official that he had had his "MRI and pre-op" for the scheduled surgery on September 2, 2015. He further alleges that he advised the official that he was taking "Flexerill" and hydrocodone for pain and muscle relief. He alleges that he was then placed on the medical floor.

Plaintiff alleges that on September 5, 2015, Nurse Melbahaur pulled him from the medical floor and placed him in a regular cell. He alleges that he asked for a bottom bunk but was "laughed at." Plaintiff then alleges that on September 6, 2015, he put his concerns in the "kiosk" and that the answer he received from the kiosk operator on September 8, 2015 was that "medical staff handles those types of things." Plaintiff further alleges that on September 6, 2015, he also asked "medical . . . if they had been told about [his] surgery or if they could help [him] and why [he] was pulled from medical." He alleges that he got no response. Plaintiff also seems to allege that he made Lieutenant Jones aware of his medical issues on September 8, 2015.

Plaintiff next states that on September 10, 2015, Sergeant Teasley moved him to another cell. Plaintiff further alleges that he told Sergeant Teasley that he could not climb to a top bunk because he had a herniated disc but that Sergeant Teasley told him to "go to [the] top bunk or go the hole period." He alleges that he accepted the top bunk because he did not want to "go to the hole." He alleges that he again put his concerns regarding his herniated disc and lack of medical attention in the kiosk on September 11, 2015, and that he received an answer stating that "[Lieutenant Jones] has been told."

Plaintiff then alleges that on September 20, 2015, as he was getting off his bunk and his "feet hit the floor," his left leg went numb and tingled and he could not get up. Plaintiff alleges

2

that Nurses Brown, Ledding, and Melbahaur then placed him in a wheelchair and took him to "medical." Plaintiff next alleges that Nurse Brown contacted Doctor/PA Johnston and Doctor/PA Johnston allegedly told Nurse Brown "no hospital." Nurse Brown advised Plaintiff that he would get an x-ray. Plaintiff alleges that he then told Nurse Brown about his herniated disc and his scheduled surgery. Plaintiff alleges that he also asked for a wheelchair and/or a cane.

Plaintiff next states that on September 21, 2015, Deputy Jailer Hurst took him for his x-ray. He alleges that Deputy Jailer Hurst told him "if you know what is good for you, you will let this go, or you will get [dealt] with…" Plaintiff alleges that he then asked Deputy Jailer Hurst for a wheelchair or cane and that she laughed at him. Plaintiff was apparently given a wheelchair at this time but no one helped him into it. Plaintiff alleges that he then made a "med call" and stated that he could not get up "if his leg was still numb and tingling lower . . . back has sharp pain" and that Deputy Jailer Thompson told him "to crawl to get it."

Plaintiff alleges that on September 22, 2015, Lieutenant Jones told him that he would help him regarding his September 20, 2015, accident. Plaintiff also alleges that on this date he asked medical for a "second mat or cane to help [him] get around" and filled out a medical slip to get the results of his x-ray. Plaintiff also alleges that he advised another deputy that "his back was hurting bad, leg was going numb again" and that this deputy told him he would advise Lieutenant Jones.

Plaintiff alleges that on September 23, 2015, he was told that his x-ray results showed he was "fine." Plaintiff also alleges that he had to fill out a "med slip" to get "his IBU's filled." Plaintiff states that on September 24, 2015, he received his "IBU's" for lunch but did not receive them for dinner. He also alleges that he again asked for a cane on this date.

Plaintiff alleges that he filled out another "med slip" on September 25, 2015, "to get [cane] can't put hardly any pressure on left leg." He alleges that he received no response. Plaintiff also seems to allege that he told a nurse on this date that "his meds had been taken for no good reason."

Plaintiff then states that on September 26, 2015, Nurse Brown saw him and took his blood pressure. Plaintiff alleges that his blood pressure was 190/89 and that he was "in pain." Plaintiff alleges that on September 27, 2015, he asked Nurse Brown for another blood pressure check due to "left hand tingling, tightness in chest, back and leg hurting severe." Plaintiff alleges that as of "19:14" on this date, Nurse Brown had not responded. Plaintiff also alleges that he was restarted on "IBU's" again on this date but that they were "taken again...for good" on September 30, 2015.

Plaintiff next alleges that on October 1, 2015, he was in the "medical pod" and there were "18 people in a 10 man cell." He alleges that he could not get to his bunk with his tray so he "had to go into the shower and eat standing up moisture drops falling off ceiling onto tray had no choice no room."

Plaintiff alleges that on October 10, 2015, Nurse Ledding told him that she had heard that he was moving around okay and that she was moving him back to a general population cell.

Finally, Plaintiff alleges that on October 12, 2015, he had "two waffles, small scoop of oatmeal, 2 small pkgs. Koolaid, 1 pkg. of fortified milk" for breakfast and "1 country fried steak, 1 small serving peas, carrots, 1 small serving potatoes, 2 bread" for lunch. He also alleges that he had "bologna, potatoes, corn, 2 pieces bread, 1 cake" for dinner. He then questions whether this is enough food to constitute 2000 calories and states "malnutrition."

Plaintiff filed this action on October 16, 2015.

Plaintiff states that he is bringing claims for pain, suffering, harassment, malnutrition and medical abuse and neglect. He seeks monetary and punitive damages. He also seeks injunctive relief in the form of the "suspension of all workers in this claim no less than 90 days without pay." He also states that he is making claims under 28 U.S.C. §§ 2241, 2254, and 2255.

## II.     STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89

(2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc*. v. *Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

#### A. 42 U.S.C. § 1983

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Absent either element, a § 1983 claim will not lie. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

The Eighth Amendment protects convicted prisoners from the "unnecessary and wanton infliction of pain." U.S. Const. amend. VIII. Pretrial detainees are protected analogously under the Due Process Clause of the Fourteenth Amendment. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). An Eighth Amendment claim has two components, one objective,

one subjective. First, the alleged deprivation must be, objectively, "sufficiently serious," *i.e.*, the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1970) (citations and internal quotation marks omitted). Second, the official must have been "deliberately indifferent" to the inmate's health or safety. *Id.*

### 1. Deliberate Indifference to a Serious Medical Need

Plaintiff's primary claim is that he was denied treatment for a herniated disc. In support of this claim, he alleges that he told DCDC officials at his booking that he had been diagnosed with a herniated disc, a condition for which he was both taking medication and scheduled to have surgery. Plaintiff alleges that after sharing this information with DCDC officials, he was never seen by a physician, despite repeated requests for such. He further alleges that even after he aggravated his condition by getting down from a top bunk, he was still never seen by a physician. Plaintiff does admit, however, that he did receive an x-ray at this time which showed that he was "fine." Finally, he seems to allege that he was alternately moved in and out of the medical floor, given and denied pain medication, given and denied a wheelchair, and denied a cane.

#### a. Official-Capacity and Private-Entity Claims

Plaintiff has sued each individual Defendant in his/her official-capacity. "Official-capacity suits . . . 'generally represent another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Plaintiff's official-capacity claims against the Defendants employed by DCDC are actually against Daviess County. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against

county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: 1) whether Plaintiff's harm was caused by a constitutional violation; and 2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

This same municipal-liability analysis applies to § 1983 claims against a private corporation like Advanced Correctional Healthcare.[1] *See Street v. Corr. Corp. of Am.*, 102 F.3d

---

[2] The Sixth Circuit has held that "[i]t is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). Advanced Correctional Healthcare has apparently contracted with the DCDC to provide medical services to the inmates. Thus, on initial review of the complaint, the Court presumes that Advanced Correctional Healthcare is a state actor.

810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). Liability must be based on a policy or custom of the contracted private entity or "the inadequacy of [an employee's] training." *Id.* at 817; *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) ("CMS's [Correctional Medical Systems, Inc.,] liability must also be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights.").

In the instant case, Plaintiff has not alleged that DCDC or Advanced Correctional Healthcare employees acted pursuant to a policy or custom. In addition, nothing in the Complaint demonstrates that the action or inaction of any personnel occurred as a result of any custom or policy implemented or endorsed by either Daviess County or Advanced Correctional Healthcare. The Complaint, therefore, fails to establish a basis of liability against the County or Advanced Correctional Healthcare and, therefore, fails to state a cognizable § 1983 claim against them.

### b. Individual-Capacity Claims

To satisfy the objective component of an Eighth Amendment deliberate indifference claim, Plaintiff must show the existence of a sufficiently serious medical need, meaning he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citing *Farmer*, 511 U.S. at 834). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore*, 390 F.3d at 897). Several courts have recognized that a herniated disk may constitute a serious medical condition. *See e.g.*, *Brennan v. Comm'r, Ala. Dept. of Corr.*, No. 14-13227, 2015 U.S. App. LEXIS 16533 (11th Cir. Sept. 17, 2015); *Faraday v. Lantz,* No.

3:03CV1520(SRU), 2005 U.S. Dist. LEXIS 33737 at *5 (D. Conn. Dec. 12, 2005); *Sildack v. Corizon Health, Inc.*, No. 11-12939, 2013 U.S. Dist. LEXIS 141870 (E.D. Mich. Aug. 23, 2005)).

The subjective component is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 836). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)). The Court finds that the Plaintiff's allegations do not establish that Defendants were deliberately indifferently to his medical need. In so finding, the Court relies upon the Sixth Circuit's opinion in *Alspaugh v. McConnell*, in which it held as follows:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id*. However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id*.

643 F.3d 162, 169 (6th Cir. 2011).

Here, the Plaintiff has essentially alleged that he has received inadequate medical attention for his herniated disc. However, his allegations show that during the six weeks that make up his allegations, he was intermittently placed on the medical floor at DCDC and given pain medication and a wheelchair. His allegations also establish that he was regularly seen by

10

nurses and even given an x-ray after potentially aggravating his herniated disc which showed that he was "fine." Thus, although Plaintiff clearly questions the appropriateness of the medical care he has received at DCDC, his allegations show that the care he received was not "so woefully inadequate as to amount to no treatment at all." For this reason, the Court will dismiss all the individual-capacity claims against Defendants for deliberate indifference to a serious medical need.

### 2. Deliberate Indifference to Health and Safety – Malnutrition

In his Complaint, Plaintiff also claims that he suffers from malnutrition because the three meals he is served in a day do not amount to 2000 calories. The Eighth Amendment requires prisoners to be served sufficient food to maintain normal health. *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977). Here, however, despite Plaintiff's allegations regarding food portions, he does not allege that he lost weight or suffered any negative health effects from his prison diet. In addition, his Complaint shows that he received three conventional-sized meals per day. For these reasons, the Court will dismiss Plaintiff's claims for malnutrition against all Defendants for failure to state a claim upon which relief may be granted. *See also LaPlante v. Lovelace*, No. 2:13-CV-32, 2013 U.S. Dist. LEXIS 145870 at *22-25 (W.D. Mich. 2013); *Mummery v. Montgomery Cnty. Jail*, No. 3:12-0115, 2012 U.S. Dist. LEXIS 170385 at *14-16 (M.D. Tenn. 2012).

### 3. Verbal Abuse and Harassment

Finally, Plaintiff also claims that he suffered from verbal abuse and harassment by various jail officials. However, verbal abuse and harassment, although unprofessional and deplorable, do not rise to a constitutional dimension. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). This is because, with respect to prison conditions, the Eighth Amendment is only

concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). Indeed, the Sixth Circuit has stated that "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Thus, the Court will dismiss Plaintiff's claims for verbal abuse and harassment against all Defendants for failure to state a claim upon which relief may be granted.

### B. 28 U.S.C. §§ 2241, 2254, and 2255

In the relief section of his Complaint, Plaintiff also states that he is making claims under 28 U.S.C. §§ 2241, 2254, and 2255. Plaintiff cannot seek relief under these statutes in this § 1983 action. If Plaintiff believes he is entitled to relief under any one of the above, he should bring a separate action by completing the appropriate Court-supplied form. The Clerk of Court is **DIRECTED** to send Plaintiff the Court's approved forms for bringing an action under § 28 U.S.C. §§ 2241, 2254, and 2255.

### IV.  CONCLUSION

For the foregoing reasons, Plaintiff's claims against all Defendants will dismissed by separate order pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Date: December 8, 2015

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: Plaintiff, *pro se*
    Defendants
    Daviess County Attorney
4414.011